1

2

3

4          **UNITED STATES DISTRICT COURT**

5          **DISTRICT OF NEVADA**

6

7    EDWIN CARTON et al.,                    )
                                            )
8              Plaintiffs,                   )
                                            )        2:11-cv-00746-RCJ-PAL
9         vs.                                )
                                            )
10   B&B EQUITIES GROUP, LLC et al.,         )        **ORDER**
                                            )
11             Defendants.                   )
     _____ )

12           This case arises out of a set of complex life insurance investments.  Pending before the

13   Court are: (1) Defendant Maureen Torkelson's Motion for Judgment on the Pleadings (ECF No.

14   157);[1] (2) Plaintiffs' Motion for Leave to file a Second Amended Complaint (ECF No. 163);[2] (3)

15   Defendants Robert G. Burns, Kenneth D. Huntley, and the Kenneth D. Huntley Irrevocable Life

16   Insurance Trust Motion for Determination of Good Faith Settlement (ECF No. 165); (4)

17   Torkelson's Motion for Determination of Good Faith Settlement (ECF No. 167);[3] and (5) the

18   Report and Recommendation ("R&R") (ECF No. 181) of the magistrate judge recommending

19   that the Answers of Defendants Robert L. Eberle, B&B Equities Group, LLC ("B&B"), Global

20   _____

21         [1]Plaintiffs have not timely responded to this motion despite two stipulations to extend
     time to respond, presumably because Plaintiffs have settled with Torkelson.  Normally, failure to
22   respond would constitute consent to granting the motion, *see* Local R. 7-2(d), however, due to
     the settlement, the motion for judgment on the pleadings is moot.
23
           [2]No Defendant has timely opposed this motion.
24
           [3]Plaintiffs have filed responses to the motions for determination of good faith settlement
25   in which they essentially join the motions.  No party has timely opposed the motions.

1   Equity Resources, LLC, Pro Financial Group, Inc., Pro Fi Group, Inc., and Estate Planning

2   Solutions Network, LLC be stricken and that default judgment be entered against those

3   Defendants.[4]

4          First, the Court denies the motion for judgment on the pleadings as moot, as Torkelson

5   has settled with Plaintiffs.  Second, the Court grants the motion to file a second amended

6   complaint, as no Defendant has objected.  Third, the Court adopts the R&R, and accordingly

7   strikes the answers of Defendants Robert L. Eberle, B&B Equities Group, LLC ("B&B"), Global

8   Equity Resources, LLC, Pro Financial Group, Inc., Pro Fi Group, Inc., and Estate Planning

9   Solutions Network, LLC, and grants default judgment against those Defendants.  Plaintiffs shall

10  submit a proposed form of judgment.  Finally, the Court will address the Motions for

11  Determination of Good Faith Settlement below.

12  **I.      FACTS AND PROCEDURAL HISTORY**

13         Stranger-originated life insurance ("STOLI") arrangements have become increasingly

14  common over the past decade. *See Sun Life Assurance Co. of Canada v. Berck*, 770 F. Supp. 2d

15  728, 729–30 (D. Del. 2011).  In a typical STOLI scheme, a speculator collaborates with an

16  elderly individual who has a high net worth in obtaining a life insurance policy against the life of

17  the wealthy individual. *See generally* 3 Leo Martinez et al., *New Appleman Insurance Law*

18  *Practice Guide* § 34.09[3] (2011).  The wealthy individual is often promised cash upon the future

19  sale of the policy or enticed to enter the arrangement through the promise of two years of free life

20  insurance.  The speculator provides non-recourse financing to purchase the policy—secured by

21  the policy—which comes due after the two-year contestability period during which the insurer

22  has to challenge the policy.  If the insured dies within the two-year contestability period, the

23  speculator is repaid, with interest, out of the proceeds of the policy.  If the insured survives the

24  

25  

[4]No party has objected to the R&R, and the deadline to do so was September 9, 2012.

two-year contestability period, there are two ways he or she may repay the speculator. First, the

insured may pay the outstanding debt and accrued interest and retain the policy. This option is

generally less attractive because the interest rates are often high or because the insured was

promised a portion of the proceeds upon the sale of the policy. Second, the insured may transfer

the policy to the speculator to satisfy the debt, and the speculator may then sell the policy on the

secondary market. These arrangements ultimately amount to unlawful wagering and have

generally been disfavored by courts. *See Berck*, 770 F. Supp. 2d at 730.

Plaintiffs Edwin and Lonnie Carton were first introduced to STOLI transactions by

Defendant Bruce Plotnick, whom they met at a financial planning seminar in the early to mid

2000's. (First Am. Compl. 12, July 12, 2011, ECF No. 43). Plotnick was the featured lecturer at

the seminar and is the principal employee and owner of Defendant Estate Planning Solution

Network ("EPSN"). (*Id.* 7). Plotnick suggested the Cartons invest their retirement funds in a

concept called "premium financing" through Defendant Robert Koppel ("R. Koppel"). (*Id.*).

Plotnick and R. Koppel told the Cartons that B&B Equities Group, LLC ("B&B"), a Nevada

limited liability company whose managing members are Defendants R. Koppel and Robert

Eberle, would organize limited liability companies which would be assigned the rights to the life

insurance policies of the insured third-parties and would assume the liabilities in funding the

policies. (*Id.* 13). The Cartons were then informed they would receive an ownership interest in

these limited liability companies and were guaranteed a return of 20% on their investment. (*Id.*).

The Cartons were also told that the insurance premiums would be paid by the limited liability

companies for a two year period, after which they would be repaid in one of two ways: (1) the

insured would keep the policy and pay off the loan with interest, or (2) the insured would sell the

policy on the secondary market. (*Id.* 10). The Cartons claim they were under the impression that

this type of transaction was legal and that the insurance company would have full knowledge of

the arrangement. (*See* Opp'n to Mot. to Dismiss 9, ECF No. 113).

1      On July 16, 2008, the Cartons invested $700,000 with B&B through Plotnick and R.

2   Koppel. (First Am. Compl. 14).  The investment was spread over seven insurance policies

3   (collectively, "the Policies"), which insured six individuals (collectively "the Insureds"). (*Id.* 17).

4   Three of the Policies were through Defendant American General Life Insurance Co. ("American

5   General") and insured Defendants–Insureds Thomas E. Colbert, Wanda D. Dean, and Kenneth D.

6   Huntley. (*Id.*).  Thomas Colbert is a resident of Nevada, Wanda Dean is a resident of California,

7   and Kenneth Huntley is a resident of Iowa. (*Id.* 7–8).  Three of the Policies were through

8   Defendant Aviva Life and Annuity Co. ("Aviva") and insured Defendants–Insureds Kenneth D.

9   Huntley, Leon E. Dean, and Samuel L. Diggle. (*Id.* 17).  Leon Dean is a resident of California

10  and Samuel Diggle is a resident South Carolina. (*Id.* 7–8).  The final policy was through Americo

11  Financial Life & Annuity Insurance Co. ("Americo") and insured Defendant–Insured Gloria Diaz

12  Rivera, a resident of Puerto Rico. (*Id.* 8, 17).  The face amounts of these policies ranged from

13  $600,000 to $3,000,000. (*Id.* 17).  The beneficiaries of the Policies were irrevocable life

14  insurance trusts that bore the names of the respective Insureds, e.g., "the Kenneth D. Huntley

15  Irrevocable Life Insurance Trust" (collectively, the "ILITs"). (*Id.* 8, 18).  The Insureds served as

16  trustees for their respective ILITs. (*Id.* 19).

17      On the American General applications for life insurance, the Insureds failed to answer the

18  question that asked for information about the "Premium Payor" if it were different from the

19  policy owner, even though third parties, viz., Plaintiffs, were in fact providing financing to pay

20  the policy premiums. (*Id.* 26–28).  On the Aviva applications for life insurance, the Insureds

21  failed to inform Aviva of the premium financing arrangement. (*Id.*).

22      The Insured signed promissory notes in their capacities as trustees of their respective

23  ILITs, promising to repay the loans obtained from the Cartons and agreeing to an interest rate of

24  20% per annum on those loans. (*Id.*).  This amount became payable either: (a) the day following

25  the two year anniversary of the note; (b) the date of the death of the insured; (c) the date of any

breach; or (d) the date of any default. (*Id.* 20). Limited liability companies were created bearing

the names of the Insureds (Plaintiffs Kenneth Huntley II, LLC; Kenneth Huntley IV, LLC; Leon

Dean II, LLC; Gloria Diaz II, LLC; Thomas Colbert V, LLC; Wanda Dean II, LLC; and Samuel

Diggle II, LLC) (collectively, the "LLCs"), and the Insureds executed collateral assignments

assigning and pledging the insurance policies to the LLCs as collateral to secure the loans

financing the first two years of premium payments. (*Id.* 21). The Cartons obtained an interest in

the LLCs reflecting the percentage of the funding they provided for the respective life insurance

policy premiums, and in August 2008 they received a package of documents that included the

insurance application for each policy, the secured promissory note, the collateral assignment, and

other relevant documents. (*Id.* 16, 25).

The loans were all set to expire between June and September of 2009. (*Id.* at 27–29).

However, in July of 2009, the Cartons received letters informing them that additional investors

had been brought in to pay a third year of premiums on four of the Policies, thus decreasing the

Cartons' percentage interest in the Policies. (*Id.* 25–26). None of the Policies were sold, and

apparently all of the policies have since lapsed for non-payment. (*See* Mot. to Dismiss 5, ECF

No. 90). The Cartons never received their principal or the guaranteed interest on their

investment. (First Am. Compl. 26–30).

The Cartons sued the following Defendants in this Court: B&B, Global Equity

Preservation, Inc. ("Global Preservation"); Global Equity Resources, LLC ("Global Resources");

Eagle Investment Corporation of America; Pro Financial Group, Inc. (also registered under the

name "Pro Fi Group"); R. Koppel; Robert Eberle; Steve Koppel (a shareholder and officer of

B&B) ("S. Koppel"); EPSN; Plotnick; the Insureds; the ILITs who were named as beneficiaries

of the Policies; Aviva; American General, Americo, and others. (*See* Compl., ECF No. 1).

Plaintiffs brought fourteen nominal causes of action. (*See id.*). Americo included third-party

claims, crossclaims, and counterclaims in its Answer to the Complaint. The Hon. Judge Kent J.

1    Dawson recused himself, and the Clerk reassigned the case to this Court.

2         Plaintiffs filed the First Amended Complaint ("FAC"), which joins the LLCs as Plaintiffs

3    and lists the same fourteen nominal causes of action: (1) Securities Fraud under § 10(b) of the

4    Securities Exchange Act and SEC Rule 10b-5; (2) Declaratory Judgment (rescission); (3)

5    Declaratory Judgment (refund of premiums); (4) Securities Fraud under Nevada Revised Statutes

6    ("NRS") section 90.660; (5) Fraud; (6) Constructive Fraud; (7) Breach of Contract (B&B

7    Investment Agreements); (8) Breach of Contract (Loan Documents); (9) Foreclosure; (10) Unjust

8    Enrichment; (11) Injunctive Relief; (12) Breach of Fiduciary Duty; (13) Deceptive Trade

9    Practices under NRS Chapter 598; and (14) Professional Negligence. (*See* Am. Compl., July 12,

10   2011, ECF No. 43).  Defendant Pro Fi Group, Inc. included counterclaims with its Answer to the

11   FAC.  Americo included third-party claims, crossclaims, and counterclaims in its Answer to the

12   FAC.

13        The Court granted American General's and Aviva's separate motions to dismiss and

14   denied Defendants' Samuel Diggle's and the Samuel L. Diggle Irrevocable Life Insurance Trust's

15   motion to dismiss.  In substance, the Court ruled that the Insureds never intended to repay the

16   premium payments, but that the transactions were structured to ensure free life insurance to the

17   Insureds for two years, after which the Policies would be sold on the secondary market to repay

18   the investors.  The Court also found that the ILITs and LLCs were created to hide the investors'

19   interests in the Policies form the insurers.  The STOLIs were therefore invalid and void ab initio

20   under the respective laws or public policies of Nevada, California, Iowa, and South Carolina, in

21   which states the STOLIs were issued.  The Court ruled that the Cartons had standing not because

22   of their interests in the Policies, which were void, but rather because the insurers held funds that

23   rightfully belonged to the Cartons, i.e., under an unjust enrichment theory.  The Court ruled that

24   the Cartons' claims for declaratory and injunctive relief against the insurers therefore depended

25   upon their unjust enrichment claim, which the Court dismissed for failure to state a claim

1    because it was not inequitable for the insurers to retain the premiums under the present

2    circumstances, but that, on the contrary, it would be inequitable to order disgorgement of funds

3    from an innocent party to a party that had notice of facts clearly making the agreement void.  The

4    insurers were themselves victims of the STOLI scheme with no knowledge thereof or complicity

5    therein, and who bore the risk of having to pay under the Policies, whereas the Cartons and other

6    investors were clearly on notice of the scheme even if they had no illicit intent.  The Court

7    therefore dismissed the claims against the insurers, without prejudice, permitting Plaintiffs to

8    amend to plead facts indicating that the insurers had notice of the illicit scheme such that equity

9    might permit an unjust enrichment claim.

10          The Court denied Defendants' Samuel Diggle's and the Samuel L. Diggle Irrevocable

11   Life Insurance Trust's motion to dismiss for lack of subject matter jurisdiction.  The Court ruled

12   that the state law claims against those Defendants were sufficiently related to the securities fraud

13   issues to support supplemental jurisdiction.  All the claims arose out of the same "nucleus of

14   operative fact": the STOLI schemes.  The Court also ruled that the LLCs could still sue and be

15   sued under Nevada law despite having had their charters revoked, and that the Cartons had

16   standing to sue those Defendants because Plaintiffs' use of an LLC as a vehicle for their

17   investments did not obviate their injury in fact.

18          The Court granted Plaintiff's motion to dismiss the counterclaims of certain Defendants

19   because the "counterclaim" in fact set forth no counterclaims in the pleading so titled.  The Court

20   also struck certain Defendants' pleadings for failure to comply with the Rule 11 signature

21   requirement.

22          Finally, the Court noted that if Defendants ESPN, Pro FI, Pro Financial, B&B, and Global

23   Resources did not obtain legal representation by December 17, 2011, they would risk entry of

24   default judgment, because corporate entities could only appear in court through admitted counsel.

25          The parties later stipulated to dismiss all claims against Americo and the Diaz entities

1  pursuant to a settlement agreement.  Plaintiffs voluntarily dismissed as against Defendants

2  Crump Insurance Services, Inc., f.k.a. Bisys Insurance Services, Inc., and Kyle Bloss.

3      Torkelson filed a Motion for Judgment on the Pleadings.  Plaintiffs filed a Motion for

4  Leave to File a Second Amended Complaint.  Defendants Robert G. Burns, Kenneth D. Huntley,

5  and the Kenneth D. Huntley Irrevocable Life Insurance Trust (collectively, "Burns and Huntley")

6  filed a Motion for Determination of Good Faith Settlement, as did Torkelson.  Finally, the

7  magistrate judge submitted an R&R recommending that the Answers of Defendants Robert L.

8  Eberle, B&B Equities Group, LLC ("B&B"), Global Equity Resources, LLC, Pro Financial

9  Group, Inc., Pro Fi Group, Inc., and Estate Planning Solutions Network, LLC be stricken and that

10  default judgment be entered against those Defendants.

11  **II.   LEGAL STANDARDS**

12      Under Nevada law, a court's declaration that a settlement is entered into in good faith has

13  specific legal effects:

14      1.  When a release or a covenant not to sue or not to enforce judgment is given in
15  good faith to one of two or more persons liable in tort for the same injury or the
    same wrongful death:

16          (a)  It does not discharge any of the other tortfeasors from liability for the
        injury or wrongful death unless its terms so provide, but it reduces the
17          claim against the others to the extent of any amount stipulated by the
        release or the covenant, or in the amount of the consideration paid for it,
18          whichever is the greater; and

19          (b)  It discharges the tortfeasor to whom it is given from all liability for
        contribution and for equitable indemnity to any other tortfeasor.
20

21      2.  As used in this section, "equitable indemnity" means a right of indemnity that
    is created by the court rather than expressly provided for in a written agreement.

22  Nev. Rev. Stat. § 17.245.  In 1983, a court of this District had anticipated that the Nevada

23  Supreme Court would adopt the rationale of the California courts in interpreting "good faith"

24  under the statute. *See Velsicol Chem. Corp. v. Davidson*, 811 P.2d 561, 563 (Nev. 1991) (quoting

25  *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 927 (D. Nev. 1983) (Bechtle, J.) ("Factors

1    to be considered by the Court in assessing whether a settlement is in good faith is [sic] the

2    amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the

3    insurance policy limits of settling defendants, the financial condition of settling defendants, and

4    the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling

5    defendants.") (alteration in original)).  The Nevada Supreme Court, however, rejected the

6    limitations of California's five-factor test, ruling instead that "determination of good faith [is]

7    left to the discretion of the trial court based upon all relevant facts available, and . . . in the

8    absence of an abuse of that discretion, the trial court's findings [will] not be disturbed." *Id.*

9    **III.    ANALYSIS**

10        No party has objected to the Motions for Determination of Good Faith Settlement or the

11   R&R.  The Court therefore grants the motions for determination of good faith settlement and

12   adopts the R&R.

13        Plaintiffs and Burns and Huntley represent that Burns and Huntley have good faith

14   defenses but wish to avoid litigation expenses, that the settlement affects only those insurance

15   policies for which Burns was the agent and Huntley was the insured, that there are no insurance

16   policies that might potentially indemnify Burns and Huntley against Plaintiffs' claims.  Burns

17   and Huntley deny liability but will pay the Cartons $11,000 to buy their peace, with the parties to

18   bear their own fees and costs.  The Court finds the agreement to be in good faith.

19        Plaintiffs and Torkelson represent that Torkelson denies liability but will pay the Cartons

20   $1000 to buy her peace, with the parties to bear their own fees and costs.  Torkelson and

21   Plaintiffs represent that Torkelson's Motion for Judgment on the Pleadings is "str[ong]."

22   Torkelson simply submitted an application on behalf of her father, Thomas Colbert.  The Court

23   finds the agreement to be in good faith.

24        Finally, because Defendants Robert L. Eberle, B&B Equities Group, LLC, Global Equity

25   Resources, LLC, Pro Financial Group, Inc., Pro Fi Group, Inc., and Estate Planning Solutions

1  Network, LLC failed to comply with this Court's order to obtain counsel and notify the Court of

2  its retention of counsel, and because they have otherwise failed to participate in discovery, the

3  magistrate judge has recommended striking those Defendants' Answers and entering default

4  judgment against them.  For the reasons given in the R&R, the Court agrees.

5  **CONCLUSION**

6  IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No.

7  157) is DENIED as moot.

8  IT IS FURTHER ORDERED that the Motion for Leave to file a Second Amended

9  Complaint (ECF No. 163) is GRANTED.

10  IT IS FURTHER ORDERED that the Motions for Determination of Good Faith

11  Settlement (ECF Nos. 165, 167) are GRANTED.

12  IT IS FURTHER ORDERED that the Report and Recommendation ("R&R") (ECF No.

13  181) is ADOPTED.  The Answers of Defendants Robert L. Eberle, B&B Equities Group, LLC,

14  Global Equity Resources, LLC, Pro Financial Group, Inc., Pro Fi Group, Inc., and Estate

15  Planning Solutions Network, LLC (ECF Nos. 44, 51, 52, 53, 59, 60) are STRICKEN, and default

16  judgment is GRANTED in favor of Plaintiffs against those Defendants.  Plaintiffs shall submit a

17  proposed form of judgment.

18  IT IS SO ORDERED.

19  Dated this 26th day of November, 2012.

20

21  _____

22  ROBERT C. JONES
   United States District Judge

23

24

25